UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

TIMOTHY S.,[1]                                                                          6:20-cv-01371-JR

                                    Plaintiff,

                                                                          OPINION AND ORDER

            v.

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

Russo, Magistrate Judge:

        Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final

decision denying plaintiff's application for supplemental security income. Plaintiff asserts

disability beginning January 22, 2015, due to mental health issues, back issues, and Post Traumatic

Stress Disorder ("PTSD"). Tr. 141, 355. After a hearing held on August 20, 2019, an

Administrative Law Judge (ALJ) determined plaintiff was not disabled. Tr. 15-27. Plaintiff

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.

contends the ALJ erred by: (1) rejecting plaintiff's symptom testimony; (2) rejecting the medical

opinion of Mark Dillon, Ph.D.; (3) rejecting lay witness testimony; and (4) failing to incorporate

all medical findings into plaintiff's residual functional capacity ("RFC").

1.      Plaintiff's Testimony

On February 13, 2015, plaintiff indicated he experienced the "worst imaginable pain"

exhibiting diminished strength in his lower extremities and restricted lumbar motion.  Tr. 690-91.

At the August 20, 2019 hearing, the plaintiff testified he is unable to stand longer than 10 minutes

without his leg going numb due to a pinched nerve in his left hip.  Tr. 116.  The plaintiff also

reported experiencing nightmares every night and an inability to focus for long periods.  Id.

Additionally, the plaintiff testified that he has anxiety when he is around people and crowds.  Tr.

116-117.

The ALJ concluded the plaintiff's medically determinable impairments could reasonably

be expected to cause some of the alleged symptoms, but the plaintiff's statements concerning the

intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the

medical evidence and other evidence in the record.  Tr. 21.

With respect to plaintiff's lumbar spine impairment, the ALJ cites to physical therapy

records contemporaneous to the amended onset date that document plaintiff's subjective complaint

of "the 'worst imaginable pain' in his back that radiated down his leg," and acknowledges it

appeared plaintiff exhibited diminished strength in his lower extremities and restricted lumbar

motion.  Id.  The ALJ further notes that medical imaging from April 2015 confirmed "the presence

of multilevel lumbar degenerative changes showing broad-based disc bulge with annular fissure at

L3-L4, broad central disc extrusion and annular fissure at L4-L5."  Tr. 21; 720.  However, the ALJ

notes that medical imaging also confirmed there was "no significant canal compromise or

foraminal narrowing, and L5-S1 broad-based disc bulge cause moderate to severe bilateral

foraminal narrowing, disc materials in close approximation to the exiting L5 nerve roots

bilaterally, and mild bilateral facet arthrosis." Tr. 21; 720.  Additionally, the ALJ cites to plaintiff's

2015 medical appointment where the plaintiff reportedly presented as "well-appearing" and in no

acute distress.  Tr. 21.  At that same appointment, plaintiff exhibited "5/5 motor strength in his

lower extremities without any apparent tenderness or loss of sensation." Id.  The ALJ also cites to

a nerve conduction study from August 2015 that was "normal" with no evidence of radiculopathy

or neuropathy. Id.

Furthermore, the ALJ cites to a physical consultative examination from February 2019

where the plaintiff reported "numbness, tingling and pain throughout the left lower extremity and

left low back pain." Id.  The examination noted the plaintiff exhibited "excessive pain behaviors

and self-limited range of motion exercises." Id.  The ALJ further elaborates on the examination

citing:

> He had no difficulty transferring between sitting and standing due to pain or
> weakness and had completely normal gait.  He was able to walk on heels and toes
> and tandem walk but completed [sic] of left hip and left lower back pain.  There
> was no tenderness to palpation throughout the paraspinals, but he had pain on the
> left at the sacral level as well as the left iliac crest area, left lateral buttock, left
> greater trochanter, and mid-buttock as well.  Straight leg raising was limited on the
> left due to the back pain at less than 45 degrees. When supine, the claimant was
> able to passively flex the left hip 20 degrees and on the right hip 27 degrees and
> described lower lumbar pain bilaterally.  He had 5/5 strength in the right lower
> extremity but left hip flexion, knee extension, and plantar flexion of the ankle were
> limited by localized back pain.  The examiner, Michael Henderson, M.D. assessed
> the claimant with low back pain with radiculopathy but noted that there was a lack
> of objective information to support this.  Dr. Henderson indicated that multiple
> inconsistencies were noted on examination that were also inconsistent with the
> previous examinations after the motor vehicle accident.  Therefore, due to the lack
> of consistency in the history, records and exam, Dr. Henderson could not confirm
> the subjective complaints of pain or functional limitations.

Tr. 21-22; see Tr. 923-26.  Based on the conflicting evidence from plaintiff's subjective reports and his medical record, the ALJ determined plaintiff's medically documented lumbar condition reasonably justifies certain exertional limitations, but subsequent medical findings are not consistent with a debilitating pain condition.  Tr. 22.  A tendency to exaggerate and inconsistent statements during examinations also provides sufficient grounds to discredit plaintiff's testimony.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir.2001).  Therefore, the ALJ provides specific, clear, and convincing reasons for rejecting the plaintiff's subjective symptom testimony by specifically identifying the testimony inconsistent with the objective medical evidence.

With respect to plaintiff's mental impairments, the plaintiff was diagnosed with major depressive disorder and recurrent anxiety disorder by his primary care provider.  Tr. 22.  The plaintiff was referred to mental health treatment that he subsequently stopped attending due to not wanting to participate in group therapy.  Id.  The plaintiff was prescribed Abilify for anxiety by his primary care provider and he continued this medication with minor changes in his regimen throughout the relevant period.  Id.  Additionally, the plaintiff briefly received treatment for generalized anxiety disorder in March 2016 and April 2016.  Id.  However, plaintiff was discharged from this treatment after he stopped attending therapy and was non-responsive to outreach attempts.  Id.  The plaintiff reported doing well without Wellbutrin and Abilify in June 2016, July 2016, August 2016, and September 2016.  Id.  Moreover, after the amended onset date, the plaintiff never exhibited any significant mental abnormalities at any of his routine visits with his primary care provider or while receiving treatment at the hospital.  Id.  Additionally, the record shows the plaintiff did not "consistently seek any sort of specialized mental health treatment from a counselor, psychologist, or psychiatrist in an attempt to deal with any severe mental symptoms or that he suffered from a severe exacerbation in his mental symptoms at any time through the date

of this decision." Id.; see, e.g., Tr. 744 (plaintiff "stopped going to Deschutes Co. Mental Health

to be treated for his anxiety due to not wanting to do group therapy"); Tr. 776 ("[i]ndividual did

not return/was non-responsive to outreach attempts"); Tr. 810 ("[d]oing well without the

Wellbutrin and Abilify. He is feeling quite upbeat about life these days"); Tr. 813 ([d]oing well

without the Wellbutrin and Abilify. Advised that he not adjust medication doses or wean off meds

without discussing with his Provider in the future"). See Fair v. Bowen, 885 F.2d 597, 603–04

(9th Cir. 1989) (unexplained, or inadequately explained failure to seek treatment and failure to

follow a prescribed course of treatment can constitute clear and convincing reasons for discounting

a claimant's credibility regarding his or her symptoms).

The ALJ also cites to a psychodiagnostics interview in July 2019 conducted by Dr. Mark

Dillon where plaintiff appeared tearful and anxious throughout the examination. Tr. 22. Plaintiff

was easily distracted and mildly tangential. Id. The examination further revealed: plaintiff's

memory was grossly intact; he was oriented to person, place, and task-at-hand; and his insight was

fair. Id. Plaintiff denied any suicidal ideation and there were no indicators that he experienced

any symptoms of psychosis. Id. At the examination, plaintiff was also able to:

> identify the current and last president. He correctly named the capital city of
> Oregon and all four bordering state[s] (he added in a fifth state that is close to
> Oregon, but does not share a border). He was able to recall four of four words
> immediately after presentation, but only two of four words after a five-minute
> delay. The claimant was able to quickly and accurately solve basic mathematical
> equations using addition, subtraction, multiplication, and division. He was slow,
> but fluid naming the days of the week backwards. He was able to name most of the
> months of the year backwards, but he made one error.

Id. Based on the evidence in plaintiff's objective medical record, the ALJ rejected plaintiff's

subject symptom testimony about the intensity, persistence and limiting effects of his mental health

impairments. Therefore, the ALJ did not err in rejecting plaintiff's testimony regarding his back

pain and mental health issues.

2.      Dr. Mark Dillon

As noted above, Dr. Dillon examined plaintiff during a psychodiagnostic interview in July

2019.    Tr. 1311-21. The ALJ determined Dr. Dillon's opinion, that plaintiff "had frequent

deficiencies in concentration, persistence, and pace and continual episodes of decompensation in

work or work-like settings," was not "supported by Dr. Dillon's own relatively normal mental

status examination findings and is inconsistent with the mental health treatment record as a whole

showing that the claimant was responsive to psychotropic medication and even reported feeling

upbeat about life without this medication."  Tr. 24.

A conflict between treatment notes and a treating provider's opinion may be an adequate

reason to discount the opinion.  Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2013). "A

physician's opinion can be discredited based on contradictions between the opinion and the

physician's own notes." Buck v. Berryhill, 869 F.3d 1040, 1050 (9th Cir. 2017) (citing Bayliss v.

Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)).  As such, the ALJ did not err in giving little weight

to Dr. Dillon's opinion.

3.      Lay Witness Testimony

The inconsistencies noted by the ALJ regarding plaintiff's subjective symptom testimony

stand as sufficient germane reasons to disregard the lay witness statements.  Where an ALJ has

provided clear and convincing reasons for rejecting a claimant's symptom testimony, and the lay

witness has not described limitations beyond those alleged by the claimant, an ALJ's failure to

provide germane reasons for rejecting lay testimony can be harmless.  Molina v. Astrue, 674 F.3d

1104, 1121-22 (9th Cir. 2012).

4.      Residual Functional Capacity

The RFC constitutes the most a person can do, despite his physical or mental impairments. 20 C.F.R. § 404.1545.  In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony.  Id.; SSR 96-8p, available at 1996 WL 374184.  In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174-75 (9th Cir. 2008) (affirming the ALJ's translation of moderate functional limitations into the claimant's RFC).

"Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE."  Leroy M. v. Comm'r, Soc. Sec. Admin., No. 6:18-cv-0632-HZ, 2019 WL 4276996, at *6 (D. Or. Sept. 10, 2019) (quoting Rhinehart v. Colvin, No. 2:15-cv-01704-AC, 2016 WL 7235680, at *12 (D. Or. Dec. 12, 2016) and citing Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001)).

The ALJ weighed the evidence and translated into the RFC all of plaintiff's limitations that were supported by substantial evidence and posed hypothetical questions to the VE consistent with that RFC.  Accordingly, the Court concludes the ALJ did not err in formulating plaintiff's RFC that accounted for all of plaintiff's credible limitations, nor in posing hypothetical questions to the VE.  See Sam B. v. Comm'r of Soc. Sec., No. 2:19-CV-00354-DWC, 2019 WL 5541347, at *4 (W.D. Wash. Oct. 28, 2019) ("[T]he RFC assessment and the hypothetical questions posed to the VE were properly based on the credible functional limitations contained in the record, and thus both the RFC assessment and the hypothetical question posed to the VE were proper."); Diane M. v. Comm'r of Soc. Sec., No. 3:17-cv-01971-BR, 2018 WL 6440889, at *8 (D. Or. Dec. 6, 2018)

("[T]he Court concludes the ALJ did not err when he assessed Plaintiff's RFC and he accounted for all credible limitations in his assessment.").

CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is affirmed, and this action is dismissed.

DATED this 11th day of August, 2021.

         _/s/ Jolie A. Russo_____
         JOLIE A. RUSSO
         United States Magistrate Judge